1 | ANDRÉ BIROTTE JR.
United States Attorney
2 | ROBERT E. DUGDALE
Assistant United States Attorney
3 | Chief, Criminal Division
JOSEPH O. JOHNS (Cal. State Bar No.: 144524)
4 | DENNIS MITCHELL (Cal. State Bar No.: 116039)
Assistant United States Attorneys
5 | Environmental Crimes Section
      1300 United States Courthouse
6 |    312 North Spring Street
      Los Angeles, California 90012
7 |    Telephone: (213) 894-4536/2484
      Facsimile: (213) 534-4300
8 |    E-mail:   joseph.johns@usdoj.gov
                 dennis.mitchell@usdoj.gov
9 | IGNACIA MORENO
Assistant Attorney General
10 | SHENNIE PATEL (DC Bar No.: 462600)
Trial Attorney
11 | Environmental Crimes Section
Environment & Natural Resources Division
12 | U.S. Department of Justice
      601 D Street, NW
13 | Washington, DC 20004
      Telephone: (202) 305-0295
14 | Facsimile: (202) 514-8865
      E-mail: shennie.patel@usdoj.gov
15 | Attorneys for Plaintiff
UNITED STATES OF AMERICA

16

17 |                 UNITED STATES DISTRICT COURT

18 |          FOR THE CENTRAL DISTRICT OF CALIFORNIA

19 | UNITED STATES OF AMERICA,  ) CR No. 12-202(B)-CAS
                              )
20 |              Plaintiff,   ) PLEA AGREEMENT FOR DEFENDANT
                              ) FELIX KHA
21 |        v.                 )
                              )
22 | FELIX KHA                 )
                              )
23 |              Defendant.   )
                              )
24 | _____)

25 |        1.  This constitutes the plea agreement between FELIX KHA

26 | ("defendant"), the United States Attorney's Office for the

27 | Central District of California ("the USAO") and the U.S.

28 | Department of Justice's Environment and Crimes Section ("ECS") in

the above-captioned case.  This agreement is limited to the USAO

(references to USAO throughout this document include ECS) and

cannot bind any other federal, state, local, or foreign

prosecuting, enforcement, administrative, or regulatory

authorities.

DEFENDANT'S OBLIGATIONS

2.  Defendant agrees to:

a) At the earliest opportunity requested by the USAO

and provided by the Court, appear and plead guilty to Counts One,

Twenty-One, Twenty-Seven, Thirty-Two, and Thirty-Four of the

First Superseding Information in United States v. Vinh Chuong

Kha, FELIX KHA, et al., CR No. 12-202(B)-CAS, which charges

defendant, respectively, with Conspiracy, Smuggling Goods from

the United States, Wildlife Trafficking, Money Laundering, and

Tax Evasion, in violation of 18 U.S.C. § 371, 18 U.S.C. § 554, 16

U.S.C. §§ 3372(a)(1), 3373(d)(1)(A), 18 U.S.C. §

1956(a)(1)(A)(i), and 26 U.S.C. § 7201.

b) Not contest facts agreed to in this agreement.

c) Abide by all agreements regarding sentencing

contained in this agreement.

d) Appear for all court appearances, surrender as

ordered for service of sentence, obey all conditions of any bond,

and obey any other ongoing court order in this matter.

e) Not commit any crime; however, offenses that would

be excluded for sentencing purposes under United States

Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines")

§ 4A1.2(c) are not within the scope of this agreement.

2

f) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g) Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

3. Defendant further agrees:

a) Truthfully to disclose to law enforcement officials, at a date and time to be set by the USAO, the location of, defendant's ownership interest in, and all other information known to defendant about, all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities, and to forfeit all right, title, and interest in and to such items, specifically including all right, title, and interest in and to, all United States currency, property and assets, including the following:

(1) One White rhino shoulder mount seized on February 18, 2012, by the United States Fish and Wildlife Service ("USFWS") from the premises of Win Lee Corporation at 9641 Bolsa Avenue, Westminster, California;

(2) One carved Black rhino horn seized on February 18, 2012, by the USFWS from the premises of Win Lee Corporation at 9641 Bolsa Avenue, Westminster, California;

(3) One rhino horn with mount photos and documents seized on February 18, 2012, by the USFWS from the premises of Win Lee Corporation at 9641 Bolsa Avenue, Westminster, California;

1                  (4) 76 precious stones with certificates seized on

2  February 18, 2012, by the USFWS from the premises of Win Lee

3  Corporation at 9641 Bolsa Avenue, Westminster, California;

4                  (5) One oblong Black rhino horn carving seized on

5  February 18, 2012, by the USFWS from the premises of Win Lee

6  Corporation at 9641 Bolsa Avenue, Westminster, California;

7                  (6) Two Black rhino horns seized on February 18,

8  2012, by the USFWS from the residence at 11372 Chapman Avenue,

9  Garden Grove, California;

10                 (7) One partial Black rhino horn seized on

11  February 18, 2012, by the USFWS from the residence at 11372

12  Chapman Avenue, Garden Grove, California;

13                 (8) One bag of White rhino horn shavings seized on

14  February 18, 2012, by the USFWS from the residence at 11372

15  Chapman Avenue, Garden Grove, California;

16                 (9) One bag of White rhino horn shavings seized on

17  February 18, 2012, by the USFWS from the residence at 11372

18  Chapman Avenue, Garden Grove, California;

19                 (10) One rhino foot seized on February 18, 2012,

20  by the USFWS from the residence at 11372 Chapman Avenue, Garden

21  Grove, California;

22                 (11) Five Black rhino feet seized on February 18,

23  2012, by the USFWS from the residence at 11372 Chapman Avenue,

24  Garden Grove, California;

25                 (12) $2,800.00 seized on February 18, 2012, by the

26  USFWS from the residence at 11372 Chapman Avenue, Garden Grove,

27  California;

28                 (13) $2,488.00 seized on February 18, 2012, by the

USFWS from the residence at 11372 Chapman Avenue, Garden Grove, California;

(14) $20,000.00 seized on February 18, 2012, by the USFWS from the residence at 11372 Chapman Avenue, Garden Grove, California;

(15) Two sealed packets of $1.00 bills (unknown amount) seized on February 18, 2012, by the USFWS from the residence at 11372 Chapman Avenue, Garden Grove, California;

(16) $1,100.00 seized on February 18, 2012, by the USFWS from the residence at 11372 Chapman Avenue, Garden Grove, California;

(17) $5,781.00 seized on February 18, 2012, by the USFWS from the residence at 11372 Chapman Avenue, Garden Grove, California;

(18) $2,400.00 seized on February 18, 2012, by the USFWS from the residence at 11372 Chapman Avenue, Garden Grove, California;

(19) One rhino horn with mount photos and documents seized on February 18, 2012, by the USFWS from the residence at 11372 Chapman Avenue, Garden Grove, California;

(20) One rhino horn carving in China book seized on February 18, 2012, by the USFWS from the residence at 11372 Chapman Avenue, Garden Grove, California;

(21) 178 gold ingots (approximately .999 grams each) seized on February 18, 2012, by the USFWS from the residence at 11372 Chapman Avenue, Garden Grove, California;

(22) One bag with gold pieces seized on February 18, 2012, by the USFWS from the residence at 11372 Chapman

Avenue, Garden Grove, California;

(23) 95 gold ingots (approximately .999 grams each) seized on February 18, 2012, by the USFWS from the premises of Win Lee Corporation at 9641 Bolsa Avenue, Westminster, California;

(24) One Gary's gold custom saddle belt, one gold Rolex watch; one gold ring; one gold chain necklace; and $9,812.00 seized from defendant on February 17, 2012;

all of which defendant admits constitute the proceeds of defendant's illegal activity and/or were used to facilitate defendant's criminal activity in violation of 18 U.S.C. §§ 554, 1956(a)(1)(A), and 16 U.S.C. §§ 3372(a) and 3373(d).

b) To the Court's entry of an order of forfeiture at or before sentencing with respect to these assets and to the forfeiture of these assets.

c) To take whatever steps are necessary to pass to the United States clear title to the assets described above, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d) Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against these properties pursuant to 18 U.S.C. §§ 981 & 982, 21 U.S.C. § 853, 28 U.S.C. § 2461(c), and 16 U.S.C. § 3374(a)(2). With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the

forfeiture in the charging instrument, announcements of the
forfeiture sentencing, and incorporation of the forfeiture in the
judgment.  Defendant acknowledges that forfeiture of the assets
is part of the sentence that may be imposed in this case and
waives any failure by the Court to advise defendant of this,
pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at
the time the Court accepts defendant's guilty pleas.

   e) Not to assist any other individual in any effort to
falsely contest the forfeiture of the assets described above.

   f) Not to claim that reasonable cause to seize the
assets was lacking.

   g) To prevent the transfer, sale, destruction, or loss
of any and all assets described above to the extent defendant has
the ability to do so.

   h) To fill out and deliver to the USAO a completed
financial statement listing defendant's assets on a form provided
by the USAO.

   i) That forfeiture of assets described above shall not
be counted toward satisfaction of any special assessment, fine,
restitution, costs, or other penalty the Court may impose.

 4. Defendant admits that he received $75,680.29 and
$168,270.42 of unreported income for 2009 and 2010, respectively.
Defendant agrees that:

   a) Nothing in this agreement forecloses or limits the
ability of the Internal Revenue Service to examine and make
adjustments to defendant's returns.

   b) Defendant will not file any claim for refund of
taxes, penalties, or interest for amounts attributable to the

returns filed in connection with this plea agreement.

c) Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for 2009 and 2010.

d) Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

e) Defendant will sign closing agreements with the Internal Revenue Service contemporaneously with the signing of this plea agreement, permitting the Internal Revenue Service to assess and collect the total sum of $30,975.00 and $78,587.25 for the defendant's tax years 2009 and 2010, respectively, inclusive of the civil fraud penalty for each year.  Statutory interest, as provided by law, will be determined at the date of full payment of the taxes due and owing and associated fraud penalties listed above.

<u>THE USAO'S OBLIGATIONS</u>

5.   The USAO agrees to:

a) Not contest facts agreed to in this agreement.

b) Abide by all agreements regarding sentencing contained in this agreement.

c) At the time of sentencing, move to dismiss the remaining counts of the First Superseding Information and underlying First Superseding Indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the

8

applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d) At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e) Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of federal law arising out of defendant's conduct described in the agreed-to factual basis set forth in the Factual Basis in Support of the Plea Agreement, incorporated herein as Attachment A.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

f) Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the

Sentencing Table in U.S.S.G. Chapter 5, Part A, without regard to reductions in the term of imprisonment that may be permissible through the substitution of community confinement or home detention as a result of the offense level falling within Zone B or Zone C of the Sentencing Table.

<u>NATURE OF THE OFFENSES</u>

6. Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiracy, in violation of Title 18, United States Code, Section 371, the following must be true: (1) beginning on or about a date unknown, and ending on or about 2/18/12, there was an agreement between two or more persons to commit at least one crime as charged in the First Superseding Information; (2) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Defendant understands that for defendant to be guilty of the crime charged in Count Twenty-One, that is, Smuggling Goods from the United States and Aiding and Abetting, in violation of Title 18, United States Code, Sections 554 and 2(a), the following must be true: (1) defendant fraudulently or knowingly received, concealed, bought, sold, or facilitated the transportation, concealment, or sale of merchandise; (2) prior to export of the merchandise; and (3) knew the merchandise was intended for export contrary to United States law or regulation, <u>or that</u> (1) the crime of Smuggling Goods from the United States was committed by someone; (2) the defendant knowingly and intentionally aided,

counseled, commanded, induced or procured that person to commit each element of Smuggling Goods from the United States; and (3) the defendant acted before the crime was completed.  It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime.  The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the crime of Smuggling Goods from the United States.  The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

Defendant understands that for defendant to be guilty of the crime charged in Count Twenty-Seven, that is, Wildlife Trafficking, in violation of Title 16, United States Code, Sections 3372(a)(1) and 3373(d)(1)(A), the following must be true: (1) the defendant knowingly exported wildlife; and (2) the defendant knew that the exported wildlife had been transported or sold in violation of or in a manner unlawful under United States law or regulations, or that (1) the crime of Wildlife Trafficking was committed by someone; (2) the defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit each element of Wildlife Trafficking; and (3) the defendant acted before the crime was completed.  It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime.  The evidence must show beyond a reasonable

11

doubt that the defendant acted with the knowledge and intention of helping that person commit the crime of Smuggling Goods from the United States.  The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

Defendant understands that for defendant to be guilty of the crime charged in Count Thirty-Two, that is, Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), the following must be true: (1) defendant conducted or intended to conduct a financial transaction involving property that represented the proceeds of export of wildlife contrary to law; (2) the defendant knew that the property represented the proceeds of export of wildlife contrary to law; (3) the defendant acted with the intent to promote the carrying on of export of wildlife contrary to law; and (4) the defendant did something that was a substantial step toward committing the crime.

Defendant understands that for defendant to be guilty of the crime charged in Count Thirty-Four, that is, Tax Evasion, in violation of Title 26, United States Code, Section 7201, the following must be true: (1) defendant owed more federal income tax for the calendar year charged than was declared due on the defendant's income tax return for that calendar year; (2) the defendant knew that more federal income tax was owed than was declared due on the defendant's income tax return for that year; (3) the defendant made an affirmative attempt to evade or defeat such additional tax; and (4) in attempting to evade or defeat such additional tax, the defendant acted willfully.

12

### PENALTIES

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 554, is: ten years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 16, United States Code, Sections 3372(a)(1) and 3373(d)(1)(A), is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), is: 20 years imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of

$100.

Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7201, is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 45 years imprisonment; a three-year period of supervised release; a fine of $1,500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $500.

9.   The Court will also order forfeiture of the property listed above in paragraph 3, or substitute assets up to the value of that property.

10.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.   Defendant understands that, by pleading guilty,

14

defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.  Defendant understands that once the court accepts defendant's guilty pleas, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12.    Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

FACTUAL BASIS

13.    Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided in Attachment A to this plea agreement and agree that this

1  statement of facts is sufficient to support pleas of guilty to

2  the charges described in this agreement and to establish the

3  Sentencing Guidelines factors set forth in paragraph 15 below but

4  is not meant to be a complete recitation of all facts relevant to

5  the underlying criminal conduct or all facts known to either

6  party that relate to that conduct.

7  SENTENCING FACTORS

8      14.  Defendant understands that in determining defendant's

9  sentence the Court is required to calculate the applicable

10  Sentencing Guidelines range and to consider that range, possible

11  departures under the Sentencing Guidelines, and the other

12  sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant

13  understands that the Sentencing Guidelines are advisory only,

14  that defendant cannot have any expectation of receiving a

15  sentence within the calculated Sentencing Guidelines range, and

16  that after considering the Sentencing Guidelines and the other

17  Section 3553(a) factors, the Court will be free to exercise its

18  discretion to impose any sentence it finds appropriate up to the

19  maximum set by statute for the crimes of conviction.

20  OFFENSE LEVEL

21      15.  Defendant and the USAO stipulate and agree to the

22  following applicable Sentencing Guidelines factors:

23      Base Offense Level  :    6   [U.S.S.G. § 2Q2.1(a)]

24      Specific Offense
       Characteristics

25

26      Offense committed
       for commercial gain
       or pattern of similar
27     violations          :   +2   [U.S.S.G. § 2Q2.1(b)(1)]

28      Market value of

16

| | | | |
|---|---|---|---|
| wildlife | : | +16 | [U.S.S.G. § 2Q2.1(b)(3)(A)(ii) with cross reference to § 2B1.1 with market value between $1,000,000 and $2,500,000] |

**Adjustments**

| | | | |
|---|---|---|---|
| Acceptance of Responsibility | : | -3 | [U.S.S.G. § 3E1.1(b)] |

Total Offense Level :    21

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 5(d) are met. Defendant understands that the government will recommend a four level upward adjustment to the offense level calculation for an Aggravated Role in the Offense pursuant to U.S.S.G. § 3B1.1(a). This would result in a Total Offense Level of 25. The defendant reserves the corresponding right to argue for no upward adjustment for his role in the offense under U.S.S.G. § 3B1.1(a). Subject to paragraph 27 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures should be applied. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

1    16.   Defendant understands that there is no agreement as to

2    defendant's criminal history or criminal history category.

3    17.   Defendant reserves the right to argue for a sentence

4    outside the sentencing range established by the Sentencing

5    Guidelines based on the factors set forth in 18 U.S.C.

6    § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

7                    WAIVER OF CONSTITUTIONAL RIGHTS

8    18.   Defendant understands that by pleading guilty,

9    defendant gives up the following rights:

10                   a) The right to persist in a plea of not guilty.

11                   b) The right to a speedy and public trial by jury.

12                   c) The right to be represented by counsel – and if

13   necessary have the court appoint counsel – at trial.  Defendant

14   understands, however, that, defendant retains the right to be

15   represented by counsel – and if necessary have the court appoint

16   counsel – at every other stage of the proceeding.

17                   d) The right to be presumed innocent and to have the

18   burden of proof placed on the government to prove defendant

19   guilty beyond a reasonable doubt.

20                   e) The right to confront and cross-examine witnesses

21   against defendant.

22                   f) The right to testify and to present evidence in

23   opposition to the charges, including the right to compel the

24   attendance of witnesses to testify.

25                   g) The right not to be compelled to testify, and, if

26   defendant chose not to testify or present evidence, to have that

27   choice not be used against defendant.

28                   h) Any and all rights to pursue any affirmative

18

1  defenses, Fourth Amendment or Fifth Amendment claims, and other

2  pretrial motions that have been filed or could be filed.

3                    WAIVER OF APPEAL OF CONVICTION

4       19. Defendant understands that, with the exception of an

5  appeal based on a claim that defendant's guilty pleas were

6  involuntary, by pleading guilty defendant is waiving and giving

7  up any right to appeal defendant's convictions on the offenses to

8  which defendant is pleading guilty.

9             LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

10      20.   Defendant agrees that, provided the Court imposes a

11 total term of imprisonment on all counts of conviction of no more

12 than 71 months, defendant gives up the right to appeal all of the

13 following: (a) the procedures and calculations used to determine

14 and impose any portion of the sentence; (b) the term of

15 imprisonment imposed by the Court; (c) the fine imposed by the

16 court, provided it is within the statutory maximum; (d) the term

17 of probation or supervised release imposed by the Court, provided

18 it is within the statutory maximum; and (e) any of the following

19 conditions of probation or supervised release imposed by the

20 Court: the standard conditions set forth in General Orders 318,

21 01-05, and/or 05-02 of this Court; and the drug testing

22 conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

23      21.   The USAO agrees that, provided (a) all portions of the

24 sentence are at or below the statutory maximum specified above

25 and (b) the Court imposes a term of imprisonment of no less than

26 57 months, the USAO gives up its right to appeal any portion of

27 the sentence.

28 //

### RESULT OF WITHDRAWAL OF GUILTY PLEA

22.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### EFFECTIVE DATE OF AGREEMENT

23.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, an Assistant United States Attorney, and an Environmental Crimes Section Attorney.

### BREACH OF AGREEMENT

24.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of

defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

(a) If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

(b) The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated to dismiss or not to criminally prosecute pursuant to this agreement prosecution, or civil, administrative, or regulatory action.

c)   The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

25.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

1    a) Defendant agrees that any applicable statute of
2 limitations is tolled between the date of defendant's signing of
3 this agreement and the filing commencing any such action.

4    b) Defendant waives and gives up all defenses based on
5 the statute of limitations, any claim of pre-indictment delay, or
6 any speedy trial claim with respect to any such action, except to
7 the extent that such defenses existed as of the date of
8 defendant's signing this agreement.

9                COURT AND PROBATION OFFICE NOT PARTIES

10    26.   Defendant understands that the Court and the United
11 States Probation Office are not parties to this agreement and
12 need not accept any of the USAO's sentencing recommendations or
13 the parties' agreements to facts or sentencing factors.

14    27.   Defendant understands that both defendant and the USAO
15 are free to: (a) supplement the facts by supplying relevant
16 information to the United States Probation Office and the Court,
17 (b) correct any and all factual misstatements relating to the
18 Court's Sentencing Guidelines calculations and determination of
19 sentence, and (c) argue on appeal and collateral review that the
20 Court's Sentencing Guidelines calculations and the sentence it
21 chooses to impose are not error, although each party agrees to
22 maintain its view that the calculations in paragraph 15 are
23 consistent with the facts of this case.  While this paragraph
24 permits both the USAO and defendant to submit full and complete
25 factual information to the United States Probation Office and the
26 Court, even if that factual information may be viewed as
27 inconsistent with the facts agreed to in this agreement, this
28 paragraph does not affect defendant's and the USAO's obligations

22

not to contest the facts agreed to in this agreement.

28.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

29.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

1    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2         30.   The parties agree that this agreement will be

3    considered part of the record of defendant's guilty plea hearing

4    as if the entire agreement had been read into the record of the

5    proceeding.

6    AGREED AND ACCEPTED

7    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF CALIFORNIA
8
     ANDRÉ BIROTTE JR.
9    United States Attorney

10

11   _____          ___8/29/12___
     JOSEPH O. JOHNS                       Date
12   Assistant United States Attorney

13

14   _____          _____
     FELIX KHA                             Date
15   Defendant

16

17   _____          _____
     R. DARREN CORNFORTH                   Date
18   Attorney for Defendant
     FELIX KHA
19
     IGNACIA MORENO
20   Assistant Attorney General
     Environment & Natural Resources Division
21   U.S. Department of Justice

22   /S/  DIGITAL SIGNATURE ENTERED PER
          EMAIL AUTHORIZATION GRANTED 8/29/12   ___8/29/12___
23   SHENNIE PATEL         (JOHNS)            Date
     Trial Attorney

24

25

26

27

28

                         24

1

JOSEPH O. JOHNS                           Date
2    Assistant United States Attorney

3

4
FELIX KHA                                 Date
5    Defendant

6

7    R. Darren Cornfort                       8-8-12
R. DARREN CORNFORTH                      Date
8    Attorney for Defendant
FELIX KHA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        8/8/12
FELIX KHA                               Date
Defendant

1               <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2      I am FELIX KHA's attorney.  I have carefully and thoroughly

3 discussed every part of this agreement with my client.  Further,

4 I have fully advised my client of his rights, of possible

5 pretrial motions that might be filed, of possible defenses that

6 might be asserted either prior to or at trial, of the sentencing

7 factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing

8 Guidelines provisions, and of the consequences of entering into

9 this agreement.  To my knowledge: no promises, inducements, or

10 representations of any kind have been made to my client other

11 than those contained in this agreement; no one has threatened or

12 forced my client in any way to enter into this agreement; my

13 client's decision to enter into this agreement is an informed and

14 voluntary one; and the factual basis set forth in this agreement

15 is sufficient to support my client's entry of guilty pleas

16 pursuant to this agreement.

17

18     _____       8-8-12

    R. DARREN CORNFORTH              Date

19 Attorney for Defendant

    FELIX KHA

20

21

22

23

24

25

26

27

28

                        26

**ATTACHMENT A**

**Factual Basis in Support of Plea Agreement**

1
2
3       Beginning in or about January 26, 2010, and continuing to on
4   or about February 18, 2012, Felix Kha ("defendant") conspired and
5   agreed with Vinh Chuong Kha ("Jimmy Kha"), Jarrod Wade Steffen,
6   Nhu Mai Nguyen, and other unindicted co-conspirators, that he and
7   Jimmy Kha would purchase White and Black rhinoceros horn in
8   interstate and intrastate commerce obtained from Jarrod Wade
9   Steffen and others.  Defendant knew that both Black and White
10  rhinoceros were protected by federal law as endangered and
11  threatened species.  Defendant knew that it was illegal to
12  purchase, transport, receive, or sell Black rhinoceros horn in
13  interstate commerce.  Defendant and Jimmy Kha did not care what
14  type of rhinoceros horn they were purchasing nor the illegal
15  nature of the transactions, they just did not want to get caught
16  by law enforcement.

17      Defendant and Jimmy Kha were purchasing Black and White
18  rhinoceros horn for the purpose of exporting or shipping the horn
19  overseas to be commercially sold for the purpose of making
20  traditional libation cups or traditional herbal medicines.
21  Defendant knew that it was illegal to export any rhinoceros horn
22  from the United States without permission from the United States
23  Fish and Wildlife Service ("USFWS").  Defendant also knew that
24  Jimmy Kha's girlfriend, Nhu Mai Nguyen, was involved in the
25  illegal purchases, shipments, and commercial export and sales of
26  the Black and White rhinoceros horn.

27      During the running of the conspiracy, Felix Kha would
28  contact Jarrod Wade Steffen and others regarding individuals

located throughout the United States that were willing to sell
White or Black rhinoceros horn.   On occasion, Jarrod Wade Steffen
would identify such individuals through his own research efforts.
Between on or about January 26, 2010 through December 2011,
defendant and Jimmy Kha purchased and received rhinoceros horn in
interstate commerce at the Win Lee Corporation business located
at 9641 Bolsa Avenue, Westminster, California.   Between on or
about May 2011 through February 2012, defendant, Jimmy Kha, and
Nhu Mai Nguyen purchased and received rhinoceros horn in
interstate commerce that was shipped to Nhu Mai Nguyen's business
located at 7223 Church Street, Unit A-2, Highland, California.

During the conspiracy, Jarrod Wade Steffen and others
purchased dozens of pairs of Black and White rhinoceros horns and
shipped them to defendant, Felix Kha, and Nhu Mai Nguyen.   On or
about the dates listed below, the defendant, Felix Kha and Nhu
Mai Nguyen received, in interstate commerce for a commercial
purpose, Black and/or White rhinoceros horn at the addresses
listed:

| Date | Receiving Address |
| --- | --- |
| 01/26/10 | 9641 Bolsa Avenue, Westminster, CA |
| 04/12/10 | 9641 Bolsa Avenue, Westminster, CA |
| 05/07/10 | 9641 Bolsa Avenue, Westminster, CA |
| 06/07/10 | 9641 Bolsa Avenue, Westminster, CA |
| 06/07/10 | 9641 Bolsa Avenue, Westminster, CA |
| 06/07/10 | 9641 Bolsa Avenue, Westminster, CA |
| 06/24/10 | 9641 Bolsa Avenue, Westminster, CA |
| 06/28/10 | 9641 Bolsa Avenue, Westminster, CA |

| | |
|---|---|
| 07/06/10 | 9641 Bolsa Avenue, Westminster, CA |
| 07/06/10 | 9641 Bolsa Avenue, Westminster, CA |
| 07/13/10 | 9641 Bolsa Avenue, Westminster, CA |
| 08/07/10 | 9641 Bolsa Avenue, Westminster, CA |
| 10/08/10 | 9641 Bolsa Avenue, Westminster, CA |
| 11/09/10 | 9641 Bolsa Avenue, Westminster, CA |
| 11/17/10 | 9641 Bolsa Avenue, Westminster, CA |
| 12/30/10 | 9641 Bolsa Avenue, Westminster, CA |
| 01/01/11 | 9641 Bolsa Avenue, Westminster, CA |
| 01/07/11 | 9641 Bolsa Avenue, Westminster, CA |
| 02/05/11 | 9641 Bolsa Avenue, Westminster, CA |
| 02/07/11 | 9641 Bolsa Avenue, Westminster, CA |
| 03/02/11 | 9641 Bolsa Avenue, Westminster, CA |
| 03/03/11 | 9641 Bolsa Avenue, Westminster, CA |
| 03/04/11 | 9641 Bolsa Avenue, Westminster, CA |
| 03/23/11 | 9641 Bolsa Avenue, Westminster, CA |
| 03/31/11 | 9641 Bolsa Avenue, Westminster, CA |
| 04/01/11 | 9641 Bolsa Avenue, Westminster, CA |
| 04/07/11 | 9641 Bolsa Avenue, Westminster, CA |
| 04/11/11 | 9641 Bolsa Avenue, Westminster, CA |
| 04/11/11 | 9641 Bolsa Avenue, Westminster, CA |
| 04/25/11 | 9641 Bolsa Avenue, Westminster, CA |
| 04/29/11 | 9641 Bolsa Avenue, Westminster, CA |
| 04/29/11 | 9641 Bolsa Avenue, Westminster, CA |
| 05/10/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 05/20/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 05/20/11 | 9641 Bolsa Avenue, Westminster, CA |
| 06/03/11 | 9641 Bolsa Avenue, Westminster, CA |
| 06/07/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 06/14/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 06/23/11 | 9641 Bolsa Avenue, Westminster, CA |

| 07/08/11 | 9641 Bolsa Avenue, Westminster, CA |
| 07/27/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 07/27/11 | 9641 Bolsa Avenue, Westminster, CA |
| 08/04/11 | 9641 Bolsa Avenue, Westminster, CA |
| 08/25/11 | 9641 Bolsa Avenue, Westminster, CA |
| 08/30/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 08/31/11 | 9641 Bolsa Avenue, Westminster, CA |
| 09/02/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 09/13/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 09/22/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 10/03/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 10/06/11 | 9641 Bolsa Avenue, Westminster, CA |
| 10/07/11 | 9641 Bolsa Avenue, Westminster, CA |
| 10/13/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 10/27/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 10/31/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 11/01/11 | 9641 Bolsa Avenue, Westminster, CA |
| 11/08/11 | 7223 Church Street, Unit A-2, Highland, CA |
| 11/17/11 | 9641 Bolsa Avenue, Westminster, CA |
| 12/13/11 | 9641 Bolsa Avenue, Westminster, CA |
| 12/13/11 | 9641 Bolsa Avenue, Westminster, CA |
| 01/23/12 | 7223 Church Street, Unit A-2, Highland, CA |
| 01/25/12 | 7223 Church Street, Unit A-2, Highland, CA |
| 02/02/12 | 7223 Church Street, Unit A-2, Highland, CA |
| 02/02/12 | 7223 Church Street, Unit A-2, Highland, CA |

//

//

On or about the following dates, defendant, Jimmy Kha, and Nhu Mai Nguyen met with others who traveled to Long Beach, California from the locations listed below, to provide compensation, for previous rhinoceros horn purchases and shipments, and to provide money to fund future purchases and shipments of rhinoceros horn:

| Travel Date | Location Co-conspirator Traveled From |
|---|---|
| 08/08/09 | Omaha, NE |
| 05/11/10 | Chicago, IL |
| 11/03/10 | Milwaukee, WI |
| 12/03/10 | Chicago, IL |
| 03/28/11 | Dallas, TX |
| 06/04/11 | Austin, TX |
| 07/19/11 | Chicago, IL |
| 08/09/11 | Omaha, NE |
| 08/09/11 | Chicago, IL |
| 09/07/11 | Chicago, IL |
| 10/05/11 | Chicago, IL |
| 01/11/12 | Chicago, IL |
| 02/08/12 | Chicago, IL |

Defendant knew that the money that he, Jimmy Kha, and Nhu Mai Nguyen paid Jarrod Wade Steffen and others to fund future illegal purchases of rhinoceros horn constituted proceeds and profits from the illegal export of rhinoceros horn by defendant, Jimmy Kha, and Nhu Mai Nguyen.  Defendant knew that he, Jimmy Kha, and Nhu Mai Nguyen were funding illegal purchases of rhinoceros horn from proceeds derived from illegal sales of rhinoceros horn. Specifically, on or about the February 8, 2012 date listed above,

defendant knew that he, Jimmy Kha, and Nhu Mai Nguyen knowingly and willingly paid Jarrod Wade Steffen who had traveled from Chicago, Illinois to Long Beach, California, approximately $337,000 in U.S. currency as compensation for prior rhinoceros horn purchases and shipments and to be used to fund future rhinoceros horn purchases.

On or about October 27, 2011, defendant knowingly and willfully aided and abetted Jimmy Kha, Felix Kha, Nhu Mai Nguyen, and Win Lee Corporation to knowingly export wildlife, namely Black rhinoceros horn, that had been, prior to the export, (1) carried, transported, and shipped in interstate commerce in the course of commercial activity, and (2) sold in interstate commerce.

On or about January 23, 2012, defendant received, bought, sold, and facilitated the transportation of merchandise, namely Black rhinoceros horn, prior to exportation, knowing that such rhinoceros horn was intended for exportation contrary to any law or regulation of the United States.

During the conspiracy, defendant, Jimmy Kha, and Nhu Mai Nguyen paid, on average, between $5,000 to $7,000 per pound of rhinoceros horn.  The Black and White rhinoceros horn acquired by defendant, Jimmy Kha, and Nhu Mai Nguyen during the course of the conspiracy for export and sale overseas has a fair market value between, at a minimum, $1,000,000 to $2,500,000.

In or around June 2011, defendant and Jimmy Kha paid $150,000 to Customs officials in Vietnam as a bribe to facilitate the export of rhinoceros horn from the United States into the country of Vietnam.  Defendant and Jimmy Kha used an intermediary

in the United States to effectuate the payment of the bribe to the Vietnamese Customs officials.

For the calendar years 2009 and 2010, defendant owed more federal income tax than he declared on his income tax return for each of those calendar years.  In each instance, defendant knew that more federal income tax was owed than he declared due on his income tax returns for each of those years.  Specifically, defendant received at least $75,680.29 additional, unreported income for the calendar year 2009, and at least $168,270.42 additional, unreported income for the calendar year 2010.  As a result, defendant failed to pay additional income tax for the calendar years 2009 and 2010 in the amounts of $17,700.00 and $44,907.00, respectively.  In his efforts to evade and defeat such additional taxes, defendant willfully took affirmative steps to conceal his true taxable income, including (1) conducting purchases and sales of Black and White rhinoceros horns in cash transactions only, and (2) falsely attesting that his income tax returns for the calendar years 2009 and 2010 correctly stated his true taxable income.